1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TOSTRUD LAW GROUP, P.C.**
JON A. TOSTRUD
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640
jtostrud@tostrudlaw.com

**GAINEY McKENNA & EGLESTON**
THOMAS J. McKENNA
GREGORY M. EGLESTON
440 Park Avenue South, 5th Floor
New York, New York 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SPEISER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SIGMA DESIGNS, INC., ELIAS NADLER, J. MICHAEL DODSON, MARTIN MANNICHE, SALEEL AWSARE, AND THINH TRAN, <br><br> Defendants. | Case No. 18-cv-1670 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br><br> **JURY TRIAL DEMANDED** |

1    Plaintiff David Speiser ("Plaintiff"), by his undersigned attorneys, alleges the

2 following on information and belief, except as to the allegations specifically

3 pertaining to Plaintiff, which are based on personal knowledge.

4 **NATURE AND SUMMARY OF THE ACTION**

5    1.    Plaintiff brings this action, individually, as a public stockholder of

6 Sigma Design, Inc. ("Sigma" or the "Company") against the members of Sigma's

7 Board of Directors (the "Board" or the "Individual Defendants") and Sigma for

8 violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the

9 "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9"), and on behalf

10 of himself and a class of public stockholders of Sigma against the Individual

11 Defendants for breach of fiduciary duty.

12    2.    On December 7, 2017, Sigma and Silicon Laboratories Inc. ("Silicon

13 Labs") revealed they had entered into a definitive merger agreement (the "Merger

14 Agreement") under which Silicon Labs would acquire all of the outstanding shares

15 of common stock of Sigma for $7.05 per share. The Merger Agreement included

16 provisions requiring Sigma to take certain actions, including (1) terminate certain

17 contracts by January 22, 2018, (2) sell or wind down Sigma's TV business by

18 December 14, 2017, and (3) have $40 million in cash on hand as of January 23,

19 2018. If these conditions were not met, then Sigma would instead sell its Z-Wave

20 business to Silicon Labs for $240 million (the "Proposed Transaction"). On

21 January 23, 2018, Sigma disclosed that it had failed to meet the conditions of the

22 Merger Agreement and, instead, would be moving forward with the Proposed

23 Transaction.

24    3.    The Board of Sigma agreed to the Proposed Transaction without a

25 fairness opinion, did not have financial analyses on the Proposed Transaction, or an

26 alternative strategy as to actions to take if they could not satisfy the aforesaid

27 conditions of the Merger Agreement. Moreover, the aforesaid conditions had

28 deadlines that were too short to allow Sigma to meet them.

1        4.     On February 7, 2018, Sigma announced that it has entered into a

2 definitive agreement with Integrated Silicon Solution, Inc. ("ISSI") to sell to ISSI

3 its Wired Connectivity Business Unit, which includes Sigma Designs Israel, S.D.I.

4 Ltd., a Sigma Designs subsidiary which is the operating entity for the wired

5 connectivity business (the "Sale"). Subject to satisfaction of closing conditions,

6 ISSI has agreed to pay $28.0 million in cash, subject to certain adjustments based

7 on the amount of working capital delivered at closing and a holdback of $4.2

8 million to secure indemnification obligations of Sigma. The parties expect to close

9 the Transaction in the first quarter of Sigma's fiscal 2019, ending April 28, 2018.

10        5.     On February 23, 2018, Defendants filed a Form S-4 Registration

11 Statement (the "Registration Statement") with the United States Securities and

12 Exchange Commission ("SEC") in connection with the Proposed Transaction,

13 namely the sale of Sigma's Z-Wave business to Silicon Labs.

14        6.     The Registration Statement omits material information with respect the

15 Proposed Transaction. For these reasons and as set forth in detail herein, the

16 Individual Defendants have violated federal securities laws. Accordingly, Plaintiff

17 seeks to enjoin the Proposed Transaction or recover damages resulting from the

18 Individual Defendants' violations of these laws. Judicial intervention is warranted

19 here to rectify existing and future irreparable harm to the Company's stockholders.

20        7.     For these reasons, and as set forth in detail herein, Plaintiff seeks to

21 enjoin Defendants from taking any steps to consummate the Proposed Transaction

22 and require Sigma to file a definitive proxy statement ("Definitive Proxy") with the

23 SEC and disseminate it to Sigma's stockholders that includes the material

24 information discussed below. In the event the Proposed Transaction is

25 consummated without the material omissions referenced below being remedied,

26 Plaintiff seeks to recover damages as a result of Defendants' violations.

27

28

1

**JURISDICTION AND VENUE**

2    8.    This Court has jurisdiction over the claims asserted herein for

3   violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9

4   promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. §

5   78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6    9.    This Court has jurisdiction over Defendants because each defendant is

7   either a corporation that conducts business in and maintains operations within this

8   District or is an individual with sufficient minimum contacts with this District so as

9   to make the exercise of jurisdiction by this Court permissible under traditional

10   notions of fair play and substantial justice.

11    10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because

12   Plaintiff's claims arose in this District, where a substantial portion of the actionable

13   conduct took place, where most of the documents are electronically stored, and

14   where the evidence exists.  Sigma is headquartered in this District.

15

**THE PARTIES**

16    11.    ***Plaintiff David Speiser*** is, and has been at all times relevant hereto, a

17   stockholder of Sigma.  *See* attached certification.

18    12.    ***Defendant Sigma*** is a corporation organized and existing under the

19   laws of the State of California.  Sigma maintains its principal executive offices at

20   47467 Fremont Boulevard, Fremont, CA 94538.

21    13.    ***Defendant Elias Nader*** ("Nader") has been Interim President and

22   CEO of the Company since January 26, 2018, Chief Financial Officer since April

23   2014 and serves on the Company's Board.

24    14.    ***Defendant Michael Dodson*** ("Dodson") serves as a director on the

25   Board.

26    15.    ***Defendant Martin Manniche*** ("Manniche") serves as a director.

27    16.    ***Defendant Saleel Awsare*** ("Awsare") serves as a director.

28

3

1    17.    ***Defendant Thinh Tran*** ("Tran") served as President and CEO and was

2    a director of Sigma from 1982 to January 26, 2018.

3    18.    Defendants Nader, Dodson, Manniche, Awsare and Tran are

4    collectively referred to herein as the "Individual Defendants."

5    19.    Defendants Sigma and the Individual Defendants are collectively

6    referred to as the "Defendants."

7                        **CLASS ACTION ALLEGATIONS**

8    20.    Plaintiff brings his claim as a class action pursuant to Rule 23 of the

9    Federal Rules of Civil Procedure on behalf of all persons and entities that own

10   Sigma common stock (the "Class").  Excluded from the Class are Defendants and

11   their affiliates, immediate families, legal representatives, heirs, successors or

12   assigns and any entity in which defendants have or had a controlling interest.

13   21.    Plaintiff's claim is properly maintainable as a class action under Rule

14   23 of the Federal Rules of Civil Procedure.

15   22.    The Class is so numerous that joinder of all members is impracticable.

16   While the exact number of Class members is unknown to Plaintiff at this time and

17   can only be ascertained through discovery, Plaintiff believes that there are

18   thousands of members in the Class.  As of June 27, 2017, there were approximately

19   38,211,703 shares of Company common stock issued and outstanding. All members

20   of the Class may be identified from records maintained by Sigma or its transfer

21   agent and may be notified of the pendency of this action by mail, using forms of

22   notice similar to that customarily used in securities class actions.

23   23.    Questions of law and fact are common to the Class and predominate

24   over questions affecting any individual Class member, including, among *inter alia*:

25   (a)    Is the Class entitled to injunctive relief or damages as a result of

26   Defendants' wrongful conduct;

27   (b)    Whether Defendants have disclosed and will disclose all

28   material facts about the Transaction to stockholders;

4

1      (c)   Have the Individual Defendants breached their fiduciary duties

2   of loyalty and/or care with respect to Plaintiff and the other members of the

3   Class in connection with the Transaction; and

4      (e)   Whether Plaintiff and the other members of the Class would be

5   irreparably harmed were the Transaction complained of herein consummated.

6      24.   Plaintiff will fairly and adequately protect the interests of the Class and

7   has no interests contrary to or in conflict with those of the Class that Plaintiff seeks

8   to represent.  Plaintiff has retained competent counsel experienced in litigation of

9   this nature.

10      25.   A class action is superior to all other available methods for the fair and

11   efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be

12   encountered in the management of this action that would preclude its maintenance

13   as a class action.

14      26.   Defendants have acted on grounds generally applicable to the Class

15   with respect to the matters complained of herein, thereby making appropriate the

16   relief sought herein with respect to the Class as a whole.

17                         **SUBSTANTIVE ALLEGATIONS**

18   **The Company**

19      27.   Sigma, headquartered in Freemont, California, is a global integrated

20   system-on-chip ("SoC") solutions provider offering intelligent platforms for use in

21   a variety of home entertainment and home control appliances.  The Company's

22   business generates revenue primarily by delivery of relevant, cost-effective

23   semiconductors that are targeted toward end-product manufacturers, Original

24   Equipment Manufacturers, or OEMs, and Original Design Manufacturers, or

25   ODMs.  The Company also derives a portion of its revenue from other products and

26   services, including technology licenses, software development kits, and engineering

27   support services for hardware and software.

28

1    28.   On February 7, 2018, the Company announced that it had entered into

2    a definitive agreement with ISSI to sell to ISSI its Wired Connectivity Business

3    Unit, which includes Sigma Designs Israel, S.D.I. Ltd., a Sigma Designs subsidiary,

4    which is the operating entity for the wired connectivity business.

5    29.   The press release stated in relevant part:

6
7    Subject to satisfaction of closing conditions, ISSI has agreed to pay
     $28.0 million in cash, subject to certain adjustments based on the
8    amount of working capital delivered at closing and a holdback of $4.2
     million to secure indemnification obligations of Sigma. Sigma will
9    continue to provide certain support services during a transition period.
     The parties expect to close the transaction in the first quarter of
10   Sigma's fiscal 2019, ending April 28, 2018. Sigma currently expects
     that it will not pay any taxes associated with the receipt of the
11   transaction consideration.

12
13   30.   The terms of the Agreement substantially favor ISSI and are calculated

14   to stop other suitors from making competing offers.  For example, Defendants have

15   ensured that another potential suitor will not emerge with a competing proposal by

16   agreeing to a "no solicitation" provision in the Agreement that stops Defendants

17   from soliciting other proposals and constrains their ability to negotiate with other

18   potential buyers who wish to submit unsolicited alternative proposals.   Section

19   6.1(a) of the Agreement states:

20   Parent and Seller will not, and will cause the Company not to, allow
     any of Parent's or Seller's, or the Company's, directors, officers,
21   employees, control Affiliates, agents or any investment banker,
     attorney or other advisor or representative retained by any of them (all
22   of the foregoing collectively being the "Representatives") to, directly
     or indirectly, (i) solicit, initiate, knowingly encourage, entertain,
23   discuss, negotiate or consider the merits of, an Acquisition Proposal, or
     (ii) make available to any Person (other than Buyer) any non-public
24   information with respect to an Acquisition Proposal. Parent and Seller
     will, and will direct the Company and its Representatives to,
25   immediately cease any and all existing negotiations with any Persons
     conducted prior to or on the date of this Agreement with respect to any
26

27

28

6

Acquisition Proposal. Notwithstanding the foregoing, the provisions of this Section 6.1 shall not apply to, limit or restrict in any way, (i) Parent's performance of its obligations set forth in, and the consummation of the transactions contemplated by, that certain Agreement and Plan of Merger dated December 7, 2017 by and between Parent, and Seguin Merger Subsidiary, Inc. (the "Merger Agreement"), and (ii) the exercise by Parent's Board of Directors of its fiduciary duties and any actions taken by Parent's and its officers, directors and other representatives at the direction of Parent's Board of Directors pursuant to and in accordance with the terms of the Merger Agreement, including Section 5.6 thereof. The parties acknowledge and agree that the Company and Parent shall be free to share with Silicon Labs and its representatives (and any other third party and its representatives with whom the Company is entitled to engage with subject to and in accordance with Section 5.6 of the Merger Agreement) confidential information regarding the status of negotiations and the proposed terms and negotiations amongst the Company, Parent and Buyer.

31.    Also, the Company is obligated to promptly notify ISSI of any proposals received from other parties.  Section 6.1(b) of the Agreement states:

Parent and Seller shall promptly (and in any event within 24 hours) notify Buyer after receipt by any of the Seller Parties (or, to the knowledge of any of the Seller Parties, by any of the Representatives of the Company), of (i) any Acquisition Proposal, (ii) any inquiry, expression of interest, proposal or offer that would reasonably be expected to lead to an Acquisition Proposal, (iii) any other notice that any Person is considering making an Acquisition Proposal, (iv) any request for information relating to the purchase of the Company or for access to any of the properties, books or records of the Company by any Person or Persons other than Buyer that would reasonably be expected to lead to an Acquisition Proposal or (v) any discussions or negotiations are sought to be initiated or continued with any of the Seller Parties or any of their Representatives that would reasonably be expected to lead to an Acquisition Proposal. Such notice shall describe (A) the material terms and conditions of such Acquisition Proposal, inquiry, expression of interest, proposal, offer, notice or request and (B) the identity of the Person or Group making any such Acquisition Proposal, inquiry, expression of interest, proposal, offer, notice or request (including, if applicable, copies of any written requests,

proposals or offers, including proposed agreements or other correspondence, or, if no such written materials are available, a written description of such request, proposal or offer), and thereafter Seller shall keep Buyer fully informed of the status and details of, and any modification to, any such inquiry, expression of interest, proposal or offer and any correspondence or communications related thereto and shall provide to Buyer a true, correct and complete copy of such inquiry, expression of interest, proposal or offer and any amendments, correspondence and communications related thereto, if it is in writing, or a reasonable written summary thereof, if it is not in writing.

32.    In essence, as a result of the deal protection devices noted above, Defendants have locked up the Sale and have precluded other bidders from making competing offers for the Company.

33.    Previously, in January 2016, the Board began to consider strategic alternatives for Sigma, after receiving an expression of interest from Company A to acquire Sigma for $7.85 per share.  The process ended in December 2017, when the Board agreed to sell the Company to Silicon Labs for $7.05 per share unless certain conditions were not met, in which case Sigma would sell its Z-Wave business to Silicon Labs for $240 million.

34.    By April 2016, Sigma had received several offers for the purchase of the Company, including one at $11.25 per share. The Board requested additional bids from the three (3) interested parties at that time, including Silicon Labs, and also approached other entities.  One of the parties withdrew from the process.  New offers to purchase Sigma were made in July 2016, with the highest at $9.75 per share.  In September 2016, a previous bidder, made a new offer at $11.00 per share.

35.    On February 3, 2017, the Board considered that the bidders for the Company, which included Silicon Labs, "either lacked interest or carried to [sic] much financing or regulatory risk."  As a result, the Board determined to consider a divestiture of various assets to maximize stockholder value.  Over the course of the next ten (10) months, Sigma received several offers to purchase Company business

1  units and the entire Company.  The Proxy fails to reveal the details of some of these

2  offers.  By December 2017, Sigma had agreed to sell its wholly-owned subsidiary,

3  which operated the Company's wired connectivity business, and was negotiating

4  the sale of the remainder of the Company to Silicon Labs.

5      36.    On December 7, 2017, Sigma and Silicon Labs entered into the Merger

6  Agreement.

7      37.    The Merger Agreement included a provision for the Proposed

8  Transaction, which had been agreed to only days after the Merger Agreement was

9  executed.  The Board, however, had known for over one year that Silicon Labs was

10  interested in acquiring the Company's Z-Wave business.  In fact, in March 2016,

11  Silicon Labs informed Deutsche Bank Securities Inc.'s ("Deutche Bank") that it

12  wanted to acquire the Z-Wave business, not the entirety of the Company. At a

13  Board meeting on September 16, 2016, the Board discussed Silicon Labs' desire to

14  acquire certain Sigma businesses, but not the entirety of the Company.

15      38.    In July 2017, Silicon Labs sent Sigma an expression of interest to

16  purchase the Z-Wave business. One week after entering into an exclusivity

17  agreement, Silicon Labs then requested permission to speak to other parties about

18  acquiring Sigma's Smart TV business.

19      39.    Because the Board knew of Silicon Labs' interest in the Z-Wave

20  business, the Board should have asked Deutsche Bank to prepare financial analyses

21  of the Z-Wave business during the August 2017 to December 2017 time period.  No

22  such analysis was provided.  Between December 4 and December 7, 2017, the

23  companies negotiated the Proposed Transaction.  In a meeting on December 6,

24  2017, the Board discussed "certain financial information related to" the Proposed

25  Transaction, but in a meeting the next day determined not to request a fairness

26  opinion because there purportedly only a "limited amount of time" to do so.

27  Instead, the Board purported to rely on "its own belief and judgment, taking into

28

1    account preliminary feedback from representatives of Deutsche Bank, as to the

2    relative value" of the Proposed Transaction.

3         40.    As noted above, Sigma could not meet the conditions required in the

4    Merger Agreement and thus the parties moved forward with the Proposed

5    Transaction. The Board is planning to liquidate the Company after the Proposed

6    Transaction is consummated, even though this liquidation scenario was not

7    discussed until January 21, 2018.  Accordingly, the future of the Company was

8    decided by an uninformed Board when it agreed to the Proposed Transaction

9    without a proper financial analysis by Deutsche Bank.

10        41.    On February 23, 2018, Defendants filed the Registration Statement

11   with the SEC.  A main purpose of the Registration Statement is to provide the

12   Company's stockholders with all material information necessary for them to make

13   an informed decision on whether to vote their shares in favor of the Proposed

14   Transaction.  However, significant and material facts were not provided to Plaintiff

15   and the Class. Without such information, Sigma stockholders cannot make a fully

16   informed decision concerning whether to vote in favor or against the Proposed

17   Transaction.

18        42.    The Registration Statement also fails to disclose material information

19   concerning the sales process.  First, the Registration Statement fails to reveal the

20   amount of money to be distributed to stockholders if the Proposed Transaction is

21   consummated. The Registration Statement states that there is a risk that liabilities

22   may be incurred during the dissolution process and may affect the amount or timing

23   of distributions to stockholders, but no other estimate of the expected costs of

24   dissolution and the amount to be distributed to stockholders is provided.

25        43.    The Company's management prepared various financial forecasts and

26   projections and delivered them to the Board during the sales process. The

27   Registration Statement fails to disclose these forecasts or projections, including

28

1   ones delivered to the Board on multiple occasions from February 17, 2016 through

2   November 22, 2017.

3        44.    In addition, during the sales process, the Board, Deutsche Bank and

4   the Company's management had discussions with "various parties" about possible

5   sales of various lines of the Company's business or a sale of the Company in its

6   entirety. The Registration Statement fails to disclose the total number of parties

7   with whom discussions were had, whether the parties in question were potential

8   acquirers or potential financiers, whether the same parties were involved in both the

9   2016 sale efforts and the 2017 sale efforts, whether these parties made expressions

10  of interest for particular lines of the Company's business and/or made an expression

11  of interest for the whole of the Company, and whether there were offers to purchase

12  each of line of the Company's business, only some or one line, how many offers

13  and at what price(s).

14       45.    The Registration Statement failed to disclose the details of several of

15  the offers received by the Company, including (1) Company E's non-binding

16  indication of interest on October 5, 2017 to acquire Sigma's wired connectivity

17  business; (2) Integrated Silicon Solution, Inc. ("ISSI")'s non-binding indication of

18  interest on October 6, 2017 to acquire Sigma's wired connectivity business; (3)

19  Sigma's letter of intent to Company I on October 24, 2017 to sell Sigma's Smart

20  TV and set-top box businesses; and (4) Defendant Tran's response letter of intent

21  on February 6, 2018 related to his offer to acquire Sigma's Smart TV and set-top

22  box businesses.

23       46.    The Registration Statement reveals that as of December 6, 2017, eight

24  companies had presented offers to acquire the Company, and multiple offers had

25  been made to purchase certain of the Company's lines of business and that

26  Deutsche Bank had discussed its preliminary financial analyses of these proposals

27  with the Board, but fails to disclose what was discussed with the Board at numerous

28  meetings from February 26, 2016 through December 6, 2017.

47.  The Board negotiated the Merger Agreement beginning in early September 2017. The Registration Statement fails to disclose when the Board agreed to a deadline of December 14, 2017 to divest or wind down its Smart TV and set-top box businesses.  The Registration Statement also fails to reveal if the Board attempted to negotiate an extension of that deadline before entering into the Merger Agreement on December 7, 2017.  Furthermore, the Registration Statement fails to disclose the Board's reason for concluding that one week was sufficient time to sell or wind down those business lines.

48.  In addition, the Registration Statement fails to disclose whether Deutsche Bank had any relationships with the Company or Silicon Labs in the two years prior to the Merger Agreement, whether there was any previous or current work being conducted by Deutsche Bank for the Company or Silicon Labs and if there was, failed to disclose the amount of compensation earned by Deutsche Bank for any such work relationships with the Company or Silicon Labs.

49.  This information is necessary to provide the stockholders of the Company with a full and accurate presentation of the sales process and whether it was fair.  Without this information, the Company's stockholders will not be able to make a fully informed decision in connection with the Sale and the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

50.  Upon information and belief, the Individual Defendants personally reviewed the contents of the Registration Statement before it was filed with the SEC.  In fact, it was their fiduciary duty as directors of the Company to review the Registration Statement.  Therefore, upon information and belief, the Individual Defendants either knew or were reckless in disregarding that the Registration Statement omitted material information and was thus rendered incomplete and misleading to stockholders.

1    51.   Further, the Registration Statement indicates that on February 15,

2  2018, Deutsche Bank reviewed with the Board its financial analysis of the Asset

3  Sale and delivered to the Board an oral opinion, which was confirmed by delivery

4  of a written opinion that same day, to the effect that the Asset Sale was fair, from a

5  financial point of view, to Sigma stockholders. Accordingly, the Individual

6  Defendants undoubtedly reviewed or were presented with the material information

7  concerning Deutsche Bank's financial analyses which has been omitted from the

8  Registration Statement, and thus knew or should have known that such information

9  has been omitted.

10    52.   The Registration Statement omits certain information regarding the

11  Transaction.  For example, the December 7, 2017 opinion of Deutsche Bank relates

12  to a merger with Silicon Labs and assumes the merger is consummated.  The

13  proposed merger includes divestiture of SmartTV and wired Connectivity ("M

14  Conn").

15    53.   The Registration Statement sets forth management-prepared financial

16  projections for the Company which are materially false and misleading. The

17  Registration Statement states that in rendering its fairness opinion, Deutsche Bank

18  reviewed "certain internal analyses, financial forecasts and other information

19  relating to the Z-Wave Business and Sigma prepared by management of Sigma."

20  Accordingly, the Registration Statement should have, but failed to, disclose this

21  information that Sigma provided to the Board and Deutsche Bank and which was

22  used by Deutsche Bank in reaching its fairness opinion.

23    54.   In addition, the Registration Statement fails to disclose numerous

24  material categories of information necessary to make the Internet of Things

25  Business Projections and the January 2018 Projections, restated on a calendar year

26  basis for years 2018 through 2023, not misleading, including: revenue, gross profit,

27  EBITDA, unlevered free cash flow, net operating loss utilization schedules, and

28  stock-based compensation expense.

55.    In addition, the Registration Statement fails to disclose whether Deutsche Bank performed any type of benchmarking analysis for the Z-Wave Business in relation to the selected public transactions in the Selected Companies Analysis.

56.    Furthermore, the Registration Statement fails to disclose the individually observed multiples for each of the selected transactions in the Selected Transactions Analysis or whether Deutsche Bank performed any type of benchmarking analysis for the Z-Wave Business in relation to the selected transactions.

57.    Also, the Registration Statement fails to disclose the individual inputs and factors used by Deutsche Bank to derive the discount rate range of 13.5% to 14.5% the Discounted Cash Flow Analysis.

58.    Likewise, the Registration Statement fails to disclose the specific factors that make the cash flows associated with the Z-Wave Business considered on its own riskier than the cash flows associated with the Internet of Things projections used in Deutsche Bank's the December 7, 2017 opinion.

59.    In addition, the Registration Statement fails to disclose the basis for the terminal value growth rate of 3 to 5%.

60.    Moreover, the Registration Statement fails to disclose the reason why in its analysis Deutsche Bank used calendar year projections, rather than management's fiscal year projections

61.    Plaintiff and the other members of the Class are presently harmed by the wrongs complained of herein and lack an adequate remedy at law.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial relief.

## COUNT I

### Class Claims Against Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.     Defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

65.     Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants.  The Registration Statement misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the financial analyses performed by the Company's financial advisor.  Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

66.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to unitholders.

67.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

68.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the putative Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

69.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

70.     The Individual Defendants acted as controlling persons of Sigma within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Sigma and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

71.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and

1    had the ability to prevent the issuance of the statements or cause the statements to

2    be corrected.

3          72.    In particular, each of the Individual Defendants had direct and

4    supervisory involvement in the day-to-day operations of the Company, and,

5    therefore, is presumed to have had the power to control or influence the Proposed

6    Transaction giving rise to the securities violations as alleged herein and exercised

7    the same. The Registration Statement at issue contains the unanimous

8    recommendation of each of the Individual Defendants to approve the Proposed

9    Transaction. They were, thus, directly involved in the making of this document.

10         73.    In addition, as the Registration Statement sets forth at length, and as

11   described herein, the Individual Defendants were each involved in negotiating,

12   reviewing, and approving the Proposed Transaction. The Registration Statement

13   purports to describe the various issues and information that they reviewed and

14   considered — descriptions which had input from the Individual Defendants

15         74.    By virtue of the foregoing, the Individual Defendants have violated

16   Section 20(a) of the Exchange Act.

17         75.    Plaintiff and the Class have no adequate remedy at law.  Only through

18   the exercise of this Court's equitable powers can Plaintiff and the Class be fully

19   protected from the immediate and irreparable injury that Defendants' actions

20   threaten to inflict.

21                          **PRAYER FOR RELIEF**

22         **WHEREFORE**, Plaintiff demands judgment against Defendants jointly and

23   severally, as follows:

24         (A)   declaring this action to be a class action and certifying Plaintiff

25   as the Class representative and his counsel as Class counsel;

26         (B)   declaring that the Registration Statement is materially false or

27   misleading;

28

17

1       (C)    enjoining, preliminarily and permanently, the Proposed

2    Transaction;

3       (D)    in the event that the Proposed Transaction is consummated

4    before the entry of this Court's final judgment, rescinding it or awarding

5    Plaintiff and the Class rescissory damages;

6       (E)    directing that Defendants account to Plaintiff and the other

7    members of the Class for all damages caused by them and account for all

8    profits and any special benefits obtained as a result of their breaches of their

9    fiduciary duties.

10       (F)    awarding Plaintiff the costs of this action, including a reasonable

11    allowance for the fees and expenses of Plaintiff's attorneys and experts; and

12       (G)    granting Plaintiff and the other members of the Class such

13    further relief as the Court deems just and proper.

14                   **JURY DEMAND**

15    Plaintiff demands a trial by jury.

16

17    Dated: March 16, 2018

18                            **TOSTRUD LAW GROUP, P.C.**

19                           By: */s/ Jon A. Tostrud*
                                 Jon A. Tostrud

20                           1925 Century Park East
                           Suite 2100

21                           Los Angeles, CA 90067
                           Telephone: (310) 278-2600

22                           Facsimile: (310) 278-2640
                           jtostrud@tostrudlaw.com

23                           Thomas J. McKenna

24                           Gregory M. Egleston
                           **GAINEY McKENNA & EGLESTON**

25                           440 Park Avenue South, 5th Floor
                           New York, NY 10016

26                           Telephone: (212) 983-1300
                           Facsimile: (212) 983-0383

27                           Email: tjmckenna@gme-law.com
                           Email: gegleston@gme-law.com

28                           *Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF

I, **David Speiser** ("Plaintiff") hereby retain the Gainey McKenna & Egleston and such co-counsel it deems appropriate to associate with, subject to their investigation, to pursue my claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in *Sigma Designs, Inc.* securities that are the subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 1000 | SIGM | BUY | 12/08/2016 | $5.706 |
| 500 | SIGM | BUY | 12/13/2016 | $5.79 |
| 500 | SIGM | BUY | 12/04/2017 | $5.85 |
| | | | | |
| | | | | |

**Please list other transactions on a separate sheet of paper, if necessary.**

Plaintiff has sought to serve as a class representative in the following cases within the last three years: NONE.

Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of March 2018

*/s/ David Speiser*
Signature